**SO ORDERED.**

**SIGNED this 28 day of November, 2006.**



*Dale L. Somers*
Dale L. Somers
**UNITED STATES BANKRUPTCY JUDGE**

_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **In Re:** | |
| **MARC W. HERRMAN,** | **CASE NO. 05-15429-7** |
|  DEBTOR. | **CHAPTER 7** |
| **DOUGLAS J. COMPTON,** | |
|  PLAINTIFF, | |
| v. | **ADV. NO. 05-5834** |
| **MARC W. HERRMAN,** | |
|  DEFENDANT. | |

**OPINION DENYING PLAINTIFF'S SUMMARY JUDGMENT MOTION**

This proceeding is before the Court for resolution of the Plaintiff's motion for summary judgment. The Plaintiff appears by counsel Shon D. Qualseth of Thompson

Ramsdell & Qualseth, P.A., of Lawrence, Kansas.  The Defendant-Debtor appears by counsel Jeffrey L. Willis of Johnson, Kennedy, Dahl & Willis of Wichita, Kansas.  The Court has reviewed the relevant materials and is now ready to rule.

The Plaintiff contends the Debtor should be denied a discharge pursuant to 11 U.S.C.A. § 727(a)(2)(A) because, within one year before filing for bankruptcy, he transferred property with the intent to hinder, delay, or defraud the Plaintiff.  The Debtor concedes he made the transfers the Plaintiff is complaining about, but denies he made them with the requisite intent.  The Court concludes a trial will be necessary in order to resolve the question of the Debtor's intent.

**FACTS**

In October 2000, the Plaintiff loaned the Debtor $25,000 for a down payment on a house in or near Lawrence, Kansas ("the House").  In return, the Debtor agreed the Plaintiff "shall be entitled to one-half the proceeds from the eventual sale of" the House.  The Debtor, his wife, and children lived in the House.   In March 2002, the Debtor gave the Plaintiff a promissory note for $80,000 in return for a 50% interest in a company called Civil Development, LLC.  From that time until March 2004, the Debtor worked for that company.  He made payments on the note for about a year and a half, and then stopped.  In November 2004, the Plaintiff's lawyer sent the Debtor a letter about both debts he owed the Plaintiff.  Among other things, the attorney said the balance due on the note was about $33,600.

2

A month after receiving the attorney's letter, the Debtor formed a limited liability company called Gauge, LLC[1]; he was its sole member. The day after that, he and his wife signed a quit claim deed transferring their interest in the House to Gauge. Gauge gave them nothing at that time in exchange for the House. The deed was filed with the Douglas County Register of Deeds a few days later, but the Debtor did not otherwise notify the Plaintiff of the transfer. The Debtor testified that the purpose of the transfer to Gauge was to protect his homestead. He and his family continued to live in the House, and he testified he did not pay rent to Gauge, but has also asserted that after the transfer, he continued to pay $1,250 per month on a mortgage on the House.

In February 2005, two months after receiving the deed, Gauge sold the House to Belvedere, LC,[2] for $300,000. The sale price was based on an appraisal of the House. The Debtor's father is the sole owner of Belvedere. The sale contract included a provision that Belvedere "shall not sell, assign or transfer this Agreement or any interest under it or any interest in or to said property, without first obtaining the written consent of" Gauge.[3] The Debtor alleges that at some unspecified earlier time, he had an agreement to sell the House for $285,000 to a realty company whose owner is not related to him, and that the company failed to close on the transaction. After the sale to

---

[1]This company's name is also spelled "Guage" in some of the documents submitted in connection with the summary judgment motion.

[2]This company's name is spelled "Belvidere" in some of the documents submitted in connection with the summary judgment motion.

[3]In the quoted language, the words "said property" almost certainly refer to the House, although the contract does not make this as clear as it might have.

3

Belvedere, the Debtor and his family continued to live in the House for some months, and he paid $1,000 per month rent during that time.

Gauge used the sale proceeds to pay off the mortgage on the House, and the $95,000 balance was used for the Debtor's benefit. The Debtor used $15,000 of the money to pay off a car loan and paid almost $24,000 to reduce the balance owed on a truck loan. He paid $2,250 toward the purchase of a house in Lenexa, Kansas (probably as earnest money), and later used about $33,300 of the money to make a down payment on that house. He reported he used about $14,600 to pay various other bills between March and July 2005, but the materials presented do not indicate what he did with the other $5,800. The Debtor has never given the Plaintiff any of the proceeds from the sale of the House.

After the Debtor stopped working for Civil Development, he was unemployed for about 7 or 8 months. Then he got a job in Edwardsville, Kansas, in the Kansas City area. In March 2005, he apparently decided to move his family to the Kansas City area, so he paid some money toward the purchase of the Lenexa house. Then, in August 2005, he got a job with another Kansas City company. During that month, he made the down payment on the Lenexa house and moved his family there.

On February 8, 2005, the Plaintiff sued the Debtor in state court for breaching his payment obligations on the promissory note. The Debtor hired an attorney and filed an answer. He claims he made a settlement offer that the Plaintiff rejected. The Plaintiff has not responded to that assertion.

4

In August 2005, the Debtor sold a 1949 truck, several guns, and two saws to his father for $15,000. The Plaintiff has offered no evidence to show the items were worth more than the Debtor's father paid. The Debtor used some of that money to pay his attorneys. He also used some of it (perhaps the rest of it) to pay for home-improvement projects at the Lenexa house.

After his offer to settle the Plaintiff's state court suit was allegedly rejected, near the end of August 2005, the Debtor filed a Chapter 7 bankruptcy petition. In the Statement of Financial Affairs he filed with his petition, the Debtor reported that he had transferred the House to Belvedere in January 2005 for $300,000, and that he had sold the truck, some guns, and "25 acres" to his father in August 2005 for $15,000. Near the end of March 2006, the Debtor amended his Statement to change the "25 acres" to "2 saws," stating the change was because of a scrivener's error. At the same time, he reported that he had transferred the House to Gauge in January 2005, identifying Gauge's relationship to him as "self," and received $0 in return. He left the transfer to Belvedere in his report of transfers of his property.

The Plaintiff filed a timely complaint objecting to the Debtor's discharge. He later obtained permission and filed an amended complaint. The Plaintiff contends that with the intent to hinder, delay, and defraud him, the Debtor transferred (1) the House to Gauge and (2) the truck, guns, and saws to his father, all in violation of § 727(a)(2)(A) of the Bankruptcy Code. The Debtor admits he made the transfers, but denies that he acted with the requisite intent.

5

The Plaintiff has now moved for summary judgment. In response to the motion, the Debtor submitted a declaration in which he asserted various facts. In his brief, he contends the declaration indicates that after he incurred the two debts to the Plaintiff, events occurred that gave him defenses to the debts. The brief does not describe the events or specify how they would excuse his obligation to pay the Plaintiff on the debts. The Court has reviewed the declaration and cannot find anything in it describing events that might give the Debtor defenses on the debts.

**DISCUSSION**

*1. Summary judgment standards*

Under the applicable rules of procedure, the Court is to grant summary judgment if the moving party demonstrates that there is "no genuine issue of material fact" and that the party "is entitled to a judgment as a matter of law."[4] The substantive law identifies which facts are material.[5] A dispute over a material fact is genuine when the evidence is such that a reasonable fact finder could resolve the dispute in favor of the party opposing the motion.[6] In adjudicating disputes, bankruptcy courts usually fulfill both the judicial function and the fact-finding function. In deciding a summary judgment motion, though, the Court is limited to its judicial role, not weighing the evidence and resolving factual disputes, but merely determining whether the evidence favorable to the non-moving party

---

[4] Fed. R. Civil P. 56(c), made applicable by Fed. R. Bankr. P. 7056.

[5] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[6] *Id.*

6

about a material fact is sufficient to require a trial[7] at which the Court would act in its fact-finding role. Summary judgment is inappropriate if an inference can be drawn from the uncontroverted facts that would allow the non-moving party to prevail at trial.[8]

As a general rule, questions involving a person's intent or other state of mind cannot be resolved by summary judgment.[9] But in an exceptional case, a person's "denial of knowledge may be so utterly implausible in light of conceded or irrefutable evidence that no rational person could believe it," making a trial on the question of the person's state of mind unnecessary.[10]

*2. Fraudulent transfer or concealment of property under § 727(a)(2)(A)*

The plaintiff contends that summary judgment is proper under § 727(a)(2)(A) of the Bankruptcy Code, which provides:

> (a) The court shall grant the debtor a discharge, unless—
>     (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred . . . or concealed, or has permitted to be transferred . . . or concealed—
>         (A) property of the debtor, within one year before the date of the filing of the petition. . . .

---

[7]*Id*. at 249-52.

[8]*Id.* at 248.

[9]*Prochaska v. Marcoux*, 632 F.2d 848, 851 (10th Cir. 1980), *cert. denied* 451 U.S. 984 (1981); *see also* 10B Wright, Miller & Kane, *Fed. Prac. & Pro. Civil 3d*, §2730 (1998) (indicating actions involving state of mind can rarely be determined by summary judgment, except when the opposing party does not present sufficient circumstantial evidence to support a potential finding contrary to the person's professed state of mind).

[10]*In re Chavin*, 150 F.3d 726, 728-29 (7th Cir. 1998).

7

The Plaintiff must establish by a preponderance of the evidence that the Debtor violated this provision.[11] Since the Debtor concedes he made the questioned transfers, his discharge must be denied under this provision if the factfinder is persuaded, either by direct evidence or by inference from the facts and circumstances of the Debtor's conduct, that he made the transfers with the actual intent to hinder, delay, or defraud the Plaintiff.[12] To grant the Plaintiff's summary judgment motion, though, the Court must be convinced that no reasonable factfinder could fail to be persuaded that the Debtor made the transfers with that intent.

The Plaintiff has presented no direct evidence of the Debtor's intent, so he asks the Court to consider inferences that can be drawn from the uncontroverted circumstances. Courts have identified various types of debtor conduct, referred to as "badges of fraud," that can suggest actions intended to hinder, delay, or defraud a creditor. In *Marine Midland Business Loans, Inc. v. Carey (In re Carey)*,[13] the Tenth Circuit identified a variety of indicia of fraud, including: (1) concealment of prebankruptcy conversions; (2) conversion of assets immediately before the filing of the bankruptcy petition; (3) gratuitous transfers of property; (4) continued use by the debtor of transferred

---

[11]*First National Bank v. Serafini (In re Serafini)*, 938 F.2d 1156 (10th Cir. 1991) (standard of proof under 727(a)(2) is preponderance of evidence, not clear and convincing).

[12]*First Beverly Bank v. Adeeb (In re Adeeb)*, 787 F.2d 1339, 1342-43 (9th Cir. 1986); *Korte v. United States (In re Korte)*, 262 B.R. 464, 472-73 (8th Cir. BAP 2001); *Reese v. Kulwin (In re Kulwin)*, 187 B.R. 341, 346 (Bankr. D. Kan. 1995), *vacated pursuant to parties' settlement* 208 B.R. 229 (Bankr. D. Kan. 1997) (citing *Fox v. Schmit (In re Schmit)*, 71 B.R. 587, 590 (Bankr. D. Minn. 1987)).

[13]938 F.2d 1073, 1077 & n. 4 (10th Cir. 1991).

8

property; (5) transfers to family members; (6) obtaining credit to purchase exempt property; (7) conversion of property after entry of a large judgment against the debtor; (8) a pattern of sharp dealing by the debtor prior to bankruptcy; (9) insolvency of the debtor resulting from the conversion of the assets; and (10) the monetary value of the assets converted.

The Plaintiff cites a number of cases where intent to hinder, delay, or defraud was found, but most of them involved conclusions reached after a trial, not a ruling on a summary judgment motion, so they provide little guidance on the question when summary judgment should be granted under § 727(a)(2)(A) on a disputed issue of intent.[14] In one case the Plaintiff cites, the court denied summary judgment under § 727(a)(2)(A) because, although many indicia of fraud existed, the transactions involved were small and the debtors had offered testimony tending to negate any fraudulent intent.[15] The Plaintiff has also cited a few cases where summary judgment was granted against a debtor on the question of the debtor's intent to hinder, delay, or defraud creditors, but they were all

---

[14]*See Carey*, 938 F.2d at 1077 (reviewing ruling published at 96 B.R. 336 (Bankr. D. Okla. 1989)); *Norwest Bank Nebraska v. Tveten (In re Tveten)*, 70 B.R. 529 (Bankr. D. Minn.), *aff'd* 82 B.R. 95 (D. Minn. 1987), *aff'd* 848 F.2d 871 (8th Cir. 1988); *Pavy v. Chastant (In re Chastant)*, 873 F.2d 89 (5th Cir. 1989); *Teilhaber Manufacturing Corp. v. Hodge (In re Hodge)*, 92 B.R. 919 (Bankr. D. Kan. 1988); *National Bank of Pittsburg v. Butler (In re Butler)*, 38 B.R. 884 (Bankr. D. Kan. 1984); *Bank of Hemingford v Armstrong (In re Armstrong)*, 97 B.R. 565 (Bankr. D. Neb. 1989); *Oberst v. Oberst (In re Oberst)*, 91 B.R. 97 (Bankr. C.D. Cal. 1988).

[15]*First Nat'l Bank v. Davison (In re Davison)*, 296 B.R. 841 (Bankr. D. Kan. 2003) (court did grant summary judgment under § 727(a)(4)(A) on ground debtors had made false oaths).

9

unusual or exceptional cases, for one reason or another.[16]  For example, in *In re Chavin*, the Seventh Circuit explained that:  "A denial of knowledge may be so implausible in light of conceded or irrefutable evidence that no rational person could believe it; and if so, there is no occasion to submit the issue of knowledge to determination at a trial."[17]  The circuit went on to say that opinions suggesting testimony cannot be rejected in a summary judgment ruling based on implausibility "are at most warnings that credibility issues are to be left to the trier of fact to resolve on the basis of oral testimony *except* in extreme cases.  The exceptional category is — exceptional.  For the case to be classified as extreme, the testimony sought to be withheld from the trier of fact must be not just implausible, but utterly implausible in light of all relevant circumstances."[18]  The Court does not believe this case falls in the exceptional category described in *Chavin*.

---

[16]*See In re Chavin*, 150 F.3d 726 (7th Cir. 1998) (experienced businessman's explanations for failure to disclose various transactions and income were too far-fetched to be believed); *Meeks v. Trammell (In re Trammell)*, 197 B.R. 309 (Bankr. W.D. Ark. 1996) (debtor conceded he transferred cars to his daughter and concealed wages or accounts that were owed to him in effort to keep them from his creditors; court seems to have relied in part on conclusions it had reached in a prior trial); *Najjar v. Kablaoui (In re Kablaoui)*, 196 B.R. 705 (Bankr. S.D.N.Y. 1996) (debtor made gratuitous transfers of real property to family members while in financial difficulty but admitted he retained right to share in profits from sale or development of property; summary judgment granted because during evidentiary hearing on motion, held pursuant to Civil Rule 43(e), debtor failed to rebut presumption of fraudulent intent arising from gratuitous transfers to relatives).  The Plaintiff also cites one case where summary judgment was granted against the debtor under § 727(a)(3), (4), and (5), *Nisselson v. Wolfson (In re Wolfson)*, 139 B.R. 279, 285-89 (Bankr. S.D.N.Y. 1992).  The Court does not find that decision helpful here.

[17]150 F.3d at 728 (citations omitted).

[18]*Id.* (emphasis in original).  *See also Garrett v. Vaughan (In re Vaughan)*, 2006 WL 751388 (10th Cir. BAP Mar. 22, 2006) (in decision designated as nonbinding precedent, citing *Chavin*, among other cases, 10th Circuit BAP ruled debtors failed to negate inference of fraudulent intent arising from admitted failure to list material assets in schedules, so summary judgment against them was proper under § 727(a)(4)(a)).

10

*3. Transfer of the House to Gauge*

The Plaintiff contends he has established that the Debtor transferred the House to Gauge with the intent to hinder, delay, or defraud the Plaintiff. Some of the badges of fraud the Tenth Circuit identified in *Carey* have been shown to exist with respect to the House, although other circumstances reduce the tendency of some of them to show fraudulent intent. The Debtor did not tell the Plaintiff when he transferred the House to Gauge, and he initially failed to report the transfer in his bankruptcy schedules. On the other hand, the Plaintiff has not shown the Debtor had any legal obligation to inform him that the transfer had been made, and the deed was filed in the public records shortly after the transfer, making it possible (though unlikely) for the Plaintiff to discover it. In addition, the Debtor did report in his schedules the transfer of the House to Belvedere, although it was mistakenly listed as a transfer from him, instead of from Gauge. The transfer to Gauge was made between 8 and 9 months before the Debtor filed for bankruptcy, long enough that the factfinder might not consider it to have been immediately before the filing. Gauge did not give the Debtor anything for the House at the time the transfer was made, but the proceeds of Gauge's later sale of the House were paid largely, if not completely, for the Debtor's benefit. The Debtor and his family continued to live in the House after the transfer without paying rent to Gauge, although the Debtor claims he made mortgage payments during that time.[19] The transfer was made,

---

[19] When he was being questioned under oath, the Debtor was asked if he paid any rent to Gauge after the transfer and before Gauge sold the House to Belvedere, and he answered, "No." The Plaintiff argues this answer precludes the Debtor from alleging he made mortgage payments during that time.

11

in effect, to himself, the closest possible transferee.  The Plaintiff has not alleged the Debtor obtained credit to buy exempt property.  The Debtor made the transfer to Gauge after the Plaintiff's attorney contacted him about his debts to the Plaintiff, so the Debtor was aware that the Plaintiff might soon commence forcible collection efforts.  The Plaintiff contends the Debtor engaged in a pattern of sharp dealing by forming Gauge, transferring the House to Gauge, causing Gauge to sell the House to Belvedere, and including the provision in the sale that requires Belvedere to obtain Gauge's consent before transferring the House or the sale agreement.  While a factfinder might conclude these actions constitute a pattern of sharp dealing, the Court is not convinced that is the only conclusion a reasonable factfinder could reach.  Because the Debtor was the sole owner of Gauge, the transfer of the House to Gauge would not have affected his net worth and could not have caused him to move from solvent to insolvent.  Finally, the transfer of the House to Gauge could not have enabled the Debtor to claim the House as exempt, so the transfer could not have changed the House from non-exempt to exempt property. Under the circumstances, the Court believes the Plaintiff's evidence of badges of fraud falls short of establishing as a matter of law that the Debtor's transfer of the House to Gauge was made with the intent to hinder, delay, or defraud the Plaintiff.

Because the Debtor ultimately used some of the proceeds from Gauge's sale of the House to Belvedere to buy a new home and to reduce debts he and his wife owed on two

---

However, the Debtor's negative answer to the rent question might have been correct even if he made mortgage payments because he either (1) did not consider the mortgage payments to be "rent," or (2) made the payments directly to the mortgage holder, and not to Gauge.

vehicles — property that may be exempted under Kansas and bankruptcy law — the badges-of-fraud analysis of his actions must also be tempered by the law affecting exempt property. It is well-established under Kansas law, as well as bankruptcy law, that a debtor will be permitted to convert nonexempt property into exempt property before filing bankruptcy in order to take full advantage of the exemptions permitted. "The right to convert non-exempt assets into exempt assets is well settled in Kansas."[20] The Tenth Circuit Court of Appeals, when applying federal bankruptcy law, has stated that "the conversion of nonexempt to exempt property for the purpose of placing property out of the reach of creditors, without more, will not deprive the debtor of the exemption to which he otherwise would be entitled."[21] The legislative history accompanying the Bankruptcy Reform Act of 1978 indicates Congress intended to retain this facet of exemption law:

> As under current law, the debtor will be permitted to convert nonexempt property into exempt property before filing a bankruptcy petition. The practice is not fraudulent as to creditors, and permits the

---

[20] *In re Hodes*, 287 B.R. at 568, quoting *Douglas County Bank v. Fine (In re Fine)*, 89 B.R. 167,174 (Bankr. D. Kan. 1998) (citing *Metz v. Williams*, 149 Kan. 647, 88 P. 2d 1093 (1939)); see also *McConnell v. Wolcott*, 70 Kan. 375, 78 Pac. 848 (1904).

[21] *Marine Midland Business Loans, Inc. v. Carey (In re Carey)*, 938 F. 2d 1073, 1076 (10th Cir. 1991), quoting *Norwest Bank Neb., N.A. v. Tveten*, 848 F. 2d 871, 873–74 (8th Cir. 1998). The Plaintiff also cites *Marrama v. Citizens Bank (In re Marrama)*, 445 F.3d 518 (1st Cir. 2006). The Court notes that to the extent the decision might be read to allow an inference of fraudulent intent to be made when a debtor testifies he converted property to an exempt form in order to protect it from creditors, the Tenth Circuit's contrary rule precludes this Court from following *Marrama*. Because the debtor in *Marrama* transferred property into a spendthrift trust he created for his own benefit, however, rather than into a form the state legislature had declared to be exempt, the Court believes the decision is better read to hold such testimony supports an inference of fraudulent intent only when non-exempt property is involved.

debtor to make full use of the exemptions to which he is entitled under the law. [22]

This consideration cements the Court's view that the Plaintiff's summary judgment motion cannot be granted to the extent it relies on the Debtor's transfer of the House to Gauge.

*4. Transfer of the truck, guns, and saws to the Debtor's father*

The Plaintiff contends the Debtor's sale of the truck, guns, and saws to his father was also made with the intent to hinder, delay, or defraud the Plaintiff. This sale also involves some badges of fraud: (1) it occurred less than one month before the Debtor filed for bankruptcy; (2) the Plaintiff's lawsuit against the Debtor was pending when the sale occurred; and (3) the transfer was to a family member. On the other hand, the Plaintiff has not shown that the Debtor concealed the sale, that the property transferred was worth more than the Debtor's father paid for it, that the Debtor continued to control or use the property, or that the transfer made the Debtor insolvent. In the portions of its briefs discussing this sale, the Plaintiff's assertion that the Debtor engaged in a pattern of sharp dealing before filing for bankruptcy seems to boil down to a complaint that the Debtor used some of the proceeds from the sale of the House to buy a new homestead, that he used some of the proceeds from the sale to his father to pay for some work on that house and the rest to pay his attorneys, and that he paid a number of other creditors rather than the Plaintiff. These circumstances are simply not sufficient to convince the Court

---

[22]H. R. Rep. No. 90-595 at 361 (1977); S. Rep. No. 90-989 at 76 (1978).

that a reasonable factfinder can only conclude the Debtor sold these items to his father with the intent to hinder, delay, or defraud the Plaintiff.

**CONCLUSION**

For these reasons, the Court concludes the Plaintiff's motion for summary judgment must be denied. The parties are advised not to read this opinion to indicate how the Court is inclined to rule at trial on the question of the Debtor's intent in making the challenged transfers.